Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| COOPERATIVA DE CRÉDITO Y AHORRO LAS PIEDRAS **Recurrida**  V.  FRIDA MARCHOSKY KOGAN **Peticionaria** | KLCE202500647 | ***CERTIORARI*** procedente del Tribunal de Primera Instancia San Juan  Caso Núm: SJ2018CV03674  Sobre: Ejecución de Hipoteca por la Vía Ordinaria |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Juez Álvarez Esnard y la Juez Santiago Calderón

**Hernández Sánchez, Juez Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 18 de junio de 2025.

El 11 de junio de 2025, la Sra. Frida Marchosky Kogan (señora Frida o la peticionaria) compareció ante nos mediante recurso de *certiorari* y solicitó la revisión de una *Orden* que se emitió el 9 de mayo de 2025 y se notificó el 12 de mayo de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante el aludido dictamen, el TPI declaró No Ha Lugar la paralización de los procedimientos solicitada por la señora Frida. Además, expresó lo siguiente: "El tribunal ordenó la continuación de los procedimientos el pasado 7 de abril de 2025. La parte demandada tuvo tiempo suficiente para contactar a la parte demandante y llegar, de ser el caso, a un acuerdo".

Examinado el recurso que nos ocupa, y con el propósito de lograr el "más justo y eficiente despacho" del asunto ante nuestra consideración, prescindimos de términos, escritos o procedimientos ulteriores. Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 7.

Por los fundamentos que expondremos a continuación, ***denegamos*** el recurso de epígrafe.

Número Identificador

RES2025 _____

I.

A continuación, resumimos los hechos pertinentes para la disposición del recurso, los cuales surgen del expediente ante nuestra consideración y del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

El 30 de mayo de 2018, la Cooperativa de Ahorro y Crédito Las Piedras (la Cooperativa o la recurrida) presentó una *Demanda* sobre ejecución de hipoteca por la vía ordinaria y cobro de dinero en contra la señora Frida.[1] Alegó que, el 30 de abril de 2011, le otorgó un préstamo a la peticionaria por la suma principal de $170,000.00. Sostuvo que, el referido préstamo se garantizó mediante un pagaré hipotecario sobre una propiedad ubicada en el Barrio Cupey de Rio Piedras, por igual suma, a saber, $170,000.00, con intereses al 6.75% anual y $17,000.00 por concepto de costas, gastos y honorarios de abogado. Indicó que, la peticionaria dejó de pagar las mensualidades correspondientes al pago del préstamo a pesar de que se realizaron esfuerzos para el pago de estas.

Así pues, indicó que la señora Frida le adeudaba una cantidad de $166,639.87 en concepto de principal, y $65,393.59 en intereses acumulados, suma que continuaba devengando intereses al tipo anual del 6.75% sobre el principal, a partir del 23 de abril de 2018 y hasta su pago total. Además, expresó que la peticionaria le adeudaba la suma de $17,000.00 en costas, gastos y honorarios de abogado según estipulado; $3,803.97 por concepto de recargos, los cuales continúan acumulándose a razón de $55.14 mensuales desde el 1 de mayo de 2018; y $2,401.20 por concepto de primas de seguro de propiedad ("escrow"), suma que igualmente continúa aumentando a razón de $34.83 mensuales desde la misma fecha, hasta el pago íntegro de dichas cantidades. Por todo lo anterior,

---

[1] Véase, Entrada 1, SUMAC.

solicitó al TPI que condenara al señor Sánchez al pago de las cantidades antes descritas y que procediera a vender en pública subasta la propiedad hipotecada.

Tras varios años de trámites procesales, 13 de octubre de 2022, el TPI emitió y notificó una *Sentencia.*[2] En esta, declaró Ha Lugar la solicitud de sentencia sumaria presentada por la Cooperativa, y condenó a la peticionaria, al pago de $166,639.87, más intereses al 6.75% desde el 1 de agosto de 2012, un recargo por demora del 5%, y el 10% adicional en concepto de costas y honorarios de abogado. Además, en lo pertinente, puntualizó que, una vez la *Sentencia* adquiriera firmeza, y de no cumplirse con el pago dentro del término legal ni interponerse recurso alguno en el término de 30 días, se ordenaría la ejecución de la hipoteca sobre el bien inmueble ofrecido como garantía del pagaré. Expresó que, adjudicada la propiedad, el Alguacil debía entregar la posesión material del inmueble al mejor postor, teniendo la sentencia efectos de auto posesorio, incluyendo el desalojo de ocupantes si fuese necesario.

Inconforme con este dictamen, el 28 de octubre de 2022, la peticionaria presentó una solicitud de reconsideración.[3] La parte recurrida presentó su oposición a la solicitud de reconsideración.[4] Evaluados los escritos de ambas partes, el 6 de febrero 2023, el TPI emitió una *Resolución* que se notificó el 7 de febrero de 2023, declarando No Ha Lugar la solicitud de reconsideración.[5]

Aún en desacuerdo, el 9 de marzo de 2023, la señora Frida presentó un *Alegato de Apelación* ante el Tribunal de Apelaciones (TA). Atendido el recurso, el 22 de junio de 2023, el TA emitió una *Sentencia* en el caso núm. KLAN202300204 confirmando la decisión

---

[2] Véase, Entrada 138, SUMAC.
[3] Véase, Entrada 139, SUMAC.
[4] Véase, Entrada 141, SUMAC.
[5] Véase, Entrada 142, SUMAC.

emitida por el TPI 13 de octubre de 2022.[6] Aún inconforme, la peticionaria acudió ante el Tribunal Supremo (TS) mediante recurso de *certiorari*, el cual fue declarado No Ha Lugar.[7] Luego de registrados los mandatos tanto del TA como del TS, la *Sentencia* del 13 de octubre de 2022, advino final y firme.

El 8 de mayo de 2024, la Cooperativa presentó una *Moción de Orden de Ejecución de Sentencia*.[8] Adujo que, a la fecha de esta moción, ni la señora Frida, ni ninguna otra persona a su nombre habían satisfecho la *Sentencia* dictada, por lo cual, al 8 de mayo de 2024, la peticionaria le adeudaba la suma en el agregado de $324,565.59, la cual se desglosaba del siguiente modo: $166,639.87 de principal; $133,042.13 en intereses acumulados desde el 1 de agosto de 2012, los cuales aumentaban diariamente en la cantidad de $31.24; $7,883.59 en recargos por demora, y $17,000.00, equivalentes al 10% del principal original para gastos y honorarios de abogado, según pactado en el pagaré hipotecario. Por este motivo, argumentó que procedía la Ejecución de la Sentencia, mediante la venta judicial del inmueble hipotecado.

Así las cosas, ese mismo día, a saber, el 8 de mayo de 2024, el TPI emitió una *Orden de Ejecución de Sentencia* autorizando la ejecución de la *Sentencia* dictada el 13 de octubre de 2022.[9] Sin embargo, el 8 de julio de 2024, el TPI emitió una *Resolución* paralizando los procedimientos del caso debido a que la señora Frida se sometió al procedimiento de quiebras bajo el Capítulo 13 del Código de Quiebras.[10] El 3 de abril de 2025, la Cooperativa presentó una *Moción para Reapertura de Caso* informando que, el 27 de enero de 2025, la Corte de Quiebras para el Distrito de Puerto Rico, había

---

[6] Véase, Entrada 151, SUMAC.
[7] Véase, Entrada 152, SUMAC.
[8] Véase, Entrada 153, SUMAC.
[9] Véase, Entrada 154, SUMAC.
[10] Véase, Entrada 158, SUMAC.

desestimado la petición de la señora Frida.[11] A tales efectos, solicitó la reapertura del caso para que se continuaran con los procedimientos de ejecución de sentencia.

El 4 de abril de 2025, el TPI ordenó la continuación de los procedimientos postsentencia.[12] Posteriormente, el 8 de mayo de 2025, la recurrida presentó una *Moción Presentando Documentos Complementarios Para la Subasta Pública.*[13] En esta, acreditó que el edicto de subasta había sido publicado en dos ocasiones en el periódico de circulación general "Primera Hora" los días 9 y 17 de abril de 2025. De igual forma acompañó una declaración jurada acreditativa de dicha publicación suscrita por Elba Elisa Llanos Rodríguez, como representante de dicho periódico. Asimismo, incluyó una declaración jurada suscrita el 8 de abril de 2025 por el Sr. Humberto Meléndez Medina, en el Tribunal de Primera Instancia, Sala Superior de Guaynabo, acreditativa de la publicación del edicto el 7 de abril de 2025 en el tablón de edictos del Tribunal Superior de San Juan, la Casa Alcaldía del Municipio de San Juan y la Colecturía de Rentas Internas de San Juan. Por último, anejó evidencia de las cartas enviadas por correo certificado con acuse de recibo a las últimas direcciones conocidas de la peticionaria notificando el edicto de subasta, y de la citación personal diligenciada para esos mismos propósitos.

El 9 de mayo de 2025, la señora Frida presentó una *Moción Urgente de Paralización de Subasta.*[14] Alegó que ha residido en la propiedad objeto del presente procedimiento de ejecución hipotecaria por más de treinta años, siendo esta su residencia principal y única. Manifestó que actualmente se encontraba

---

[11] Véase, Entrada 159, SUMAC.
[12] Veáse, Entrada 160, SUMAC.
[13] Véase, Entrada 161, SUMAC.
[14] Véase, Entrada 163, SUMAC.

encamada y en condición médica delicada, lo que había limitado su capacidad de actuar oportunamente en el proceso judicial.

Indicó que la subasta estaba pautada para el 12 de mayo de 2025, y su ejecución inmediata conllevaría el desalojo forzoso de una persona vulnerable, ocasionando un daño irreparable. Así pues, adujo que, en ánimo de buena fe, presentaba una carta de intención de compra en efectivo emitida el 9 de mayo de 2025 por Khloes Developments LLC, que incluía disposición a permitir la permanencia temporal de la ocupante y apertura a negociar con la parte acreedora o participar en la subasta.

Aclaró que no tenía la intención de impugnar el proceso ni la sentencia, sino que se solicitaba un término prudente de treinta (30) días a partir del 12 de mayo de 2025 para evaluar y formalizar dicha oferta, considerar alternativas de pago o dación en pago, y prepararse para una transición digna, de ser necesario. Aseguró que la concesión del término no perjudicaba los derechos de la recurrida y representaba una oportunidad real de pago en efectivo, que podía evitar una subasta infructuosa y procesos adicionales.

Evaluada la solicitud de la señora Frida, el 9 de mayo de 2025, el TPI emitió una *Orden* que se notificó el 12 de mayo de 2025.[15] En esta, declaró No Ha Lugar la paralización de los procedimientos. Además, expresó que, el 7 de abril de 2025, había ordenado la continuación de los procedimientos por lo que la señora Frida había tenido tiempo suficiente para contactar a la parte recurrida para llegar a un acuerdo.

La subasta se celebró el 12 de mayo de 2025 y se le adjudicó la buena pro a la recurrida en abono de su sentencia.[16] Para

---

[15] Véase, Entrada 164, SUMAC.
[16] Véase, Entrada 165, SUMAC.

acreditar lo antes expuesto, el 9 de junio de 2025, el TPI emitió una *Orden de Confirmación de Adjudicación.*[17]

Inconforme con el dictamen del 9 de mayo de 2025, la señora Frida presentó el recurso de epígrafe el 11 de junio de 2025, y formuló los siguientes señalamientos de error:

> **Error de Derecho al denegar sin evaluación sustancial ni fundamentos la *Moción Urgente de Paralización de Subasta*, a pesar de que se trataba de una petición fundamentada con elementos objetivos, incluyendo una oferta concreta de compraventa para satisfacer la deuda hipotecaria antes de la ejecución.**
>
> **Abuso de Discreción Judicial al emitir la resolución el mismo día de la subasta (12 de mayo de 2025), sin conceder ni un mínimo de tiempo para que la parte deudora formalizara la transacción propuesta, imposibilitado en los hechos su derecho a pagar antes de la subasta, conforme permite el ordenamiento jurídico.**
>
> **Violación al debido proceso de ley, al frustrar de forma irrazonable el acceso de la parte demandada a un remedio alterno menos gravoso, sin justa causa y sin balancear adecuadamente los intereses envueltos.**
>
> **Desatención a consideraciones humanitarias y principios de equidad procesal, al tratarse de una persona mayor, con condiciones de salud delicadas, que había residido en la propiedad durante más de veinte años y que presentó la moción mediante representación legal, mostrando diligencia procesal.**
>
> **Ignorar el mandato de equidad procesal y prudencia judicial reconocidos por la jurisprudencia, conforme expresado por el Tribunal Supremo en decisiones que disponen que el poder discrecional debe ejercerse conforme a la equidad, la justicia y la razonabilidad.**

Cabe precisar que, en el mismo recuro de epígrafe, la peticionaria presentó una solicitud de auxilio de jurisdicción para que ordenáramos la paralización inmediata de todo trámite judicial o extrajudicial relacionado con la ejecución, adjudicación, inscripción y desalojo vinculado al inmueble objeto de esta controversia.

---

[17] Véase, Entrada 171, SUMAC.

II.

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró,* 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto, ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

Es importante destacar que, al interpretar la Regla 52.1 de Procedimiento Civil, *supra,* el Tribunal Supremo resolvió que "las resoluciones atinentes a asuntos postsentencia [como la que tenemos ante nuestra consideración] no se encuentran comprendidas entre aquellas determinaciones de naturaleza interlocutoria categóricamente sujetas a escrutinio mediante el recurso de *certiorari*". *IG Builders et. al. v. BBVAPR,* 185 DPR 307, 339 (2012). En otros términos, al determinar si procede expedir o denegar un recurso de *certiorari* en el cual se recurre de un asunto postsentencia, debemos evaluar únicamente los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B. Íd. La aludida regla establece lo siguiente:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró, supra.* La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando éste haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago*, 176 DPR 559, 581 (2009); *Rivera y Otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**III.**

Nos corresponde justipreciar si debemos ejercer nuestra facultad discrecional al amparo de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra.* Luego de examinar el expediente a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra,* no identificamos razón por la cual este Foro

deba intervenir. Ello, ya que no se presentan ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o postsentencia en los que el TPI haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Reiteramos que en el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios.

**IV.**

Por los fundamentos antes expuestos, ***denegamos*** el recurso de epígrafe y declaramos No Ha Lugar la solicitud de auxilio de jurisdicción.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones